UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD COSBY | : | |
|     Plaintiff, | : | PRISONER CASE NO. |
| | : | 3:17-cv-1589 (JCH) |
| v. | : | |
| | : | |
| MARK MORIN | : | NOVEMBER 6, 2017 |
|     Defendant. | : | |
| | : | |

# INITIAL REVIEW ORDER

On September 25, 2017, the plaintiff, Howard Cosby ("Cosby"), an inmate currently housed at Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut, filed a pro se complaint pursuant to title 42, section 1983 of the United States Code against Mark Morin ("Morin"), a phlebotomist at Cheshire Correctional Institution, in his individual and official capacities for monetary relief. Cosby is suing Morin for taking blood and urine samples from him without his consent, in violation of his Eighth Amendment protection against cruel and unusual punishment.

On September 26, 2017, this court granted Cosby's Motion to Proceed in forma pauperis. See Order (Doc. No. 6). That same day, Cosby filed a Motion to Amend his Complaint in order to add a claim that Morin violated his Fourteenth Amendment right to due process. Mot. to Amend Complaint (Doc. No. 7). This court granted Cosby's Motion to Amend on September 28, 2017. See Order (Doc. No. 8). On October 13, 2017, Cosby filed a document styled as an Amended Complaint. (Doc. No. 9). However, the text of that filing and Cosby's Motion to Amend both clearly indicate that Cosby intended the document styled as an Amended Complaint to supplement to the

initial Complaint, rather than replace it.  See Mot. to Am. at ¶ 2 (requesting leave to add a claim).  Given the plaintiff's pro se status, the court will treat the Amended Complaint as incorporating by reference the initial Complaint, and will address the facts and arguments contained in both the initial Complaint (Doc. No. 1) and the Amended Complaint (Doc. No. 9).

For the reasons articulated below, the Amended Complaint is dismissed in part.

## I. STANDARD OF REVIEW

Pursuant to title 28, section 1915A of the United States Code, this court reviews prisoner civil complaints and dismisses any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. FACTUAL ALLEGATIONS

On December 22, 2014, Morin requested that Cosby provide him with blood and

2

urine samples. Compl. (Doc. No. 1) at 6. Cosby told Morin that he did not want him to take blood and urine samples because he had just recently given them to clinical staff. Id. Despite Cosby's refusal, Morin drew the samples from Cosby. Id. On January 16, 2015, Cosby was called to the medical unit again, where a registered nurse ("RN") identified only as "Cherryl" informed Cosby that he was "there for the second part of [his] physical" and then retracted that statement, telling him he did not need to complete anything because he had had a physical in October. Id. When Cosby informed RN Cherryl that he had informed Morin of this fact and nevertheless been told he needed to submit to testing, Cherryl told Morin that "the Nurse messed up." Id.

## III. DISCUSSION

Cosby brings claims pursuant to the Eighth Amendment's protection against cruel and unusual punishment, Compl. at 6, and the Fourteenth Amendment's substantive due process right to refuse medical treatment, Am. Compl. at ¶ 2. Cosby sues Morin in his individual and official capacity, and seeks monetary damages only. Claims of monetary damages against state officials are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159 (1985); Quern v. Jordan, 440 U.S. 332, 342 (1979). Therefore, all claims against Morin in his official capacity are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

    A.    Eighth Amendment

Cosby alleges that Morin's act of drawing blood and urine samples from him constituted cruel and unusual punishment. However, Cosby's Amended Complaint implies that Morin was acting pursuant to a mistaken belief that Cosby was due for a

3

routine physical, a mistake that another member of the medical staff identified a month later. See Compl. (Doc. No. 1) at 6. This inadvertent action is insufficient to state a claim of cruel and unusual punishment. "[O]nly the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir. 1991) (quoting Ingraham v. Wright, 430 U.S. 651 (1977)); see Whitney v. Albers, 475 U.S. 312, 320 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by [the eighth amendment].").

Routine blood draws and urinalysis screenings ordinarily will not suffice to state a claim of cruel and unusual punishment. The Second Circuit has described the drawing of blood as "quite a minor intrusion, of the sort that ordinary citizens voluntarily submit to routinely for medical purposes." Nicholas v. Goord, 430 F.3d 652, 676 (2d Cir. 2005). Several lower courts have held that "a forced blood draw on a prisoner . . . is not the sort of conduct that amounts to [an Eighth Amendment] violation." Thompson v. CCA-LAC Medical Dep't, No. 1:06-CV-104, 2007 WL 390356, at *5 (D. Vt. Jan. 30, 2007); see also, e.g., Boreland v. Vaughn, No. CIV.A. 92-0172, 1993 WL 62707, at *6 (E.D. Pa. March 3, 1993) ("The use of a needle to draw blood is hardly the cruel and unusual punishment contemplated by the Eighth Amendment."). Similarly, "urinalysis testing . . . conducted in accordance with established guidelines, cannot be said to constitute obduracy and wantonness" under the Eighth Amendment. Brown v. Dreyfus, No. 9:11-CV-1298, 2013 WL 4026845, at *3 n.12 (N.D.N.Y. Aug. 6, 2013) (quoting Rodriguez v. Coughlin, 795 F. Supp. 609, 613 (W.D.N.Y. 1992)).

If a blood draw or urinalysis test were conducted maliciously or sadistically, that might be a different story: "When prison official maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated," even if "significant injury" is not caused. Hudson v. McMillian, 503 U.S. 1, 9 (1992). However, Cosby's allegations are of inadvertence, not malice, and he has therefore failed to plausibly allege cruel and unusual punishment.

Cosby's Eighth Amendment claim is therefore dismissed.

B.     Fourteenth Amendment Due Process

The Fourteenth Amendment to the United States Constitution Case provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects both a right to "substantive" due process and a right to "procedural" due process. In his Amended Complaint, Cosby asserts a substantive due process claim, alleging that Morin violated his right to refuse medical treatment. See Am. Compl. at ¶ 2.

It is well established that prisoners have a constitutionally protected liberty interest in refusing medical treatment. See Pabon v. Wright et al., 459 F.3d 241 (2d Cir. 2006); see also Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 278 (1990) (recognizing a substantive due process right to refuse medical treatment). However, the right of a prisoner to refuse treatment "must be defined in the context of the inmate's confinement." Washington v. Harper, 494 U.S. 210, 223 (1991). "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate

5

penological interests.'"  Id. (quoting Turner v. Safley, 482 U.S. 78, 107 (1987)).

The Supreme Court has held that "in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest" is required.  Washington v. Glucksberg, 521 U.S. 702, 721 (1997); see Chavez v. Martinez, 538 U.S. 760, 775 (2003) (reiterating this holding).  Applying the Supreme Court's mandate to carefully examine the liberty interest at stake, another court in this District has held that a ban on smoking, although it may have affected the medical regimens of the plaintiffs, did not "involve[ ] the right to refuse forced medical treatment."  Giordano v. Connecticut Valley Hosp., 588 F. Supp. 2d 306, 321 (D. Conn. 2008); but see Russell v. Richards, 384 F.3d 444, 450 (7th Cir. 2004) (assuming, without deciding, that delousing shampoo constituted a "medication" for refusal-of-treatment purposes).  Relevant to this case, at least one lower court has concluded that there is no "federal constitutional right to refuse to submit to a simple, one-time, diagnostic blood test."  Myers v. Jackson, No. 11-3168-SAC, 2012 WL 137935 (D. Kan. Jan. 18, 2012), aff'd mem. 505 Fed. App'x 795 (10th Cir. 2012).

Although a "simple, one-time, diagnostic blood test" may constitute a relatively minor invasion of privacy or bodily integrity, it is the view of this court that that argument is more relevant in the context of the balancing of the plaintiff's liberty interest and the penological interest of the state than to defining the liberty interest at the outset.  See Washington v. Harper, 494 U.S. at 223–24 (1991) (discussing "the need to reconcile our longstanding adherence to the principle that inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped

6

to make difficult decisions regarding prison administration"). The court therefore declines to conclude, as a matter of law, that the procedures at issue here—a blood draw and urinalysis screening—are not "medical treatment" for the purposes of the right-to-refuse doctrine.

Finally, it may be that Morin was acting pursuant to a regulation which was "reasonably related to legitimate penological interests." Turner, 482 U.S. at 107. However, drawing all inferences in favor of Cosby at this early stage, the blood draw and urinalysis at issue were not conducted pursuant to a regulation or concerns of health or safety, but rather conducted in error. Therefore, in the absence of argument from the defendant given the procedural posture of this case, the court will not dismiss Cosby's Fourteenth Amendment claim on that basis, either.

In sum, Cosby has a protected liberty interest in refusing medical treatment, and he has adequately pled that he attempted to refuse medical treatment and was forced to submit. He has further alleged that this medical treatment was not administered pursuant to a legitimate penological interest, but was rather the product of error on the part of Morin. The court therefore concludes that, for the purposes of the Initial Review Order, Cosby has stated a claim under the Fourteenth Amendment right-to-refuse doctrine.

## IV. CONCLUSION

This case will proceed on the Fourteenth Amendment violation of the plaintiff's right to refuse medical treatment claim against Morin in his individual capacity. However, Cosby's claims against Morin in his official capacity are **dismissed with**

**prejudice**, and his Eighth Amendment claim is **dismissed without prejudice**. If the plaintiff believes he can allege facts to support an Eighth Amendment claim according to the standards set forth above, he may file a Motion to Amend with a Proposed Second Amended Complaint **no later than December 6, 2017**.

**SO ORDERED.**

Dated this 6th day of November, 2017 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge